J. S20008/15

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| KENNETH NYBERG, | : | No. 317 WDA 2014 |
| | : | |
| Appellant | : | |

Appeal from the Judgment of Sentence, February 4, 2014,
in the Court of Common Pleas of Erie County
Criminal Division at Nos. CP-25-CR-0002301-2001,
CP-25-CR-0002357-2001, CP-25-CR-0002507-2001,
CP-25-CR-0002508-2001, CP-25-CR-0002509-2001,
CP-25-CR-0002510-2001, CP-25-CR-0002511-2001,
CP-25-CR-0002512-2001, CP-25-CR-0002513-2001,
CP-25-CR-0002514-2001, CP-25-CR-0002515-2001,
CP-25-CR-0002516-2001, CP-25-CR-0002517-2001,
CP-25-CR-0002518-2001, CP-25-CR-0002519-2001,
CP-25-CR-0002520-2001, CP-25-CR-0002521-2001,
CP-25-CR-0002522-2001, CP-25-CR-0002523-2001,
CP-25-CR-0002524-2001, CP-25-CR-0002525-2001,
CP-25-CR-0002526-2001, CP-25-CR-0002527-2001,
CP-25-CR-0002528-2001, CP-25-CR-0002529-2001,
CP-25-CR-0002616-2001, CP-25-CR-0002815-2001,
CP-25-CR-0002816-2001, CP-25-CR-0002817-2001,
CP-25-CR-0002867-2001, CP-25-CR-0003118-2001,
CP-25-CR-0003297-2001,

BEFORE:  FORD ELLIOTT, P.J.E., SHOGAN AND WECHT, JJ.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:          **FILED APRIL 15, 2015**

Kenneth Nyberg appeals from the judgment of sentence of February 4, 2014, following revocation of his probation.  We affirm.

On November 30, 2001, appellant pled guilty to numerous counts of insurance fraud and bad checks and was placed on intermediate

punishment. Appellant was accepted into the Erie County Treatment Court program for rehabilitation from a cocaine addiction. After approximately three months, appellant was discharged from the program for non-compliance. On March 15, 2002, appellant was revoked from intermediate punishment and sentenced to an aggregate of 6 to 12 years' incarceration, followed by probation. This court affirmed the judgment of sentence on January 28, 2003. ***Commonwealth v. Nyberg***, No. 696 WDA 2002, unpublished memorandum (Pa.Super. filed January 28, 2003). We found that the trial court put adequate reasons on the record to support its sentence, including appellant's lack of rehabilitative potential, his lack of amenability to treatment or supervision, and his perpetual dishonesty and abuse of the system. ***Id.*** at 9.

While on state and county community supervision, appellant continued to abuse cocaine and failed to pay restitution to his victims. (Trial court opinion, 4/22/14 at 2.) Appellant's probation was revoked, and he was re-sentenced to 11½ to 23 months, followed by a long probationary tail. Appellant's motion for reconsideration was denied, and this timely appeal followed. Appellant complied with Pa.R.A.P., Rule 1925(b), 42 Pa.C.S.A., and the trial court has filed a Rule 1925(a) opinion.

On appeal, appellant presents a challenge to the discretionary aspects of his sentence, arguing that the sentence is manifestly excessive and that the trial court failed to consider various mitigating factors in favor of a lesser

sentence, including his age, employment history, and education. According to appellant, he had obtained employment with DirectTV in order to pay restitution, and he was enrolled full-time at Gannon University. (Appellant's brief at 20.) Appellant argues that the sentence of 30½ years' probation is essentially a lifetime supervision sentence. (*Id.*) Appellant also claims that this is his first revocation, and he has not incurred any new criminal charges. (*Id.*)[1]

> Our standard of review is well-settled. We have explained:
>
>> The imposition of sentence following the revocation of probation is vested within the sound discretion of the trial court, which, absent an abuse of that discretion, will not be disturbed on appeal. An abuse of discretion is more than an error in judgment—a sentencing court has not abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will.
>
> *Commonwealth v. Simmons*, 56 A.3d 1280, 1283-84 (Pa.Super.2012).
>
>> In determining whether a sentence is manifestly excessive, the appellate court must give great weight to the sentencing court's discretion, as he or she is in the best position to measure factors such as the nature of the crime, the defendant's character, and the defendant's display of remorse, defiance, or indifference.

---

[1] Appellant has included the requisite Pa.R.A.P. 2119(f) statement in his brief.

> ***Commonwealth v. Mouzon***, 828 A.2d 1126, 1128
> (Pa.Super.2003).

***Commonwealth v. Colon***, 102 A.3d 1033, 1043 (Pa.Super. 2014), ***appeal***

***denied***, ___ A.3d ___ (Pa. Feb. 11, 2015).

> Upon revoking probation, a sentencing court may
> choose from any of the sentencing options that
> existed at the time of the original sentencing,
> including incarceration.  42 Pa.C.S.A. § 9771(b).
> "[U]pon revocation [of probation] . . . the trial court
> is limited only by the maximum sentence that it
> could have imposed originally at the time of the
> probationary sentence." ***Commonwealth v.***
> ***Infante***, 63 A.3d 358, 365 (Pa.Super.2013)
> (internal quotation marks and citations omitted).
> However, 42 Pa.C.S.A. § 9771(c) provides that once
> probation has been revoked, a sentence of total
> confinement may only be imposed if any of the
> following conditions exist:
>
> (1)   the defendant has been convicted of
>       another crime; or
>
> (2)   the conduct of the defendant indicates
>       that it is likely that he will commit
>       another crime if he is not imprisoned; or
>
> (3)   such a sentence is essential to vindicate
>       the authority of the court.
>
> 42 Pa.C.S.A. § 9771(c).

***Id.*** at 1044.

Instantly, we agree with the trial court that appellant fails to present a

substantial question for our review.  An argument that the sentencing court

failed to adequately consider mitigating factors in favor of a lesser sentence

does not present a substantial question appropriate for our review.

*Commonwealth v. Hanson*, 856 A.2d 1254, 1257-1258 (Pa.Super. 2004), citing *Commonwealth v. McNabb*, 819 A.2d 54, 57 (Pa.Super. 2003). *See also Commonwealth v. Williams*, 562 A.2d 1385 (Pa.Super. 1989) (*en banc*) (an allegation that the sentencing court did not adequately consider various factors is, in effect, a request that this court substitute its judgment for that of the lower court in fashioning a defendant's sentence).

Furthermore, the trial court thoroughly explained its reasons for the sentence on the record, including appellant's lack of amenability to treatment and the fact he had paid only $40 towards restitution. (Notes of testimony, 2/4/14 at 9.) *Colon*, *supra*, quoting *Commonwealth v. Cartrette*, 83 A.3d 1030, 1040-1041 (Pa.Super. 2013) (*en banc*) ("in all cases where the court resentences an offender following revocation of probation . . . the court shall make as a part of the record, and disclose in open court at the time of sentencing, a statement of the reason or reasons for the sentence imposed").

In addition, appellant's alleged mitigating factors are not supported by the record. The record indicates that appellant has not been enrolled at Gannon since 2010. (Notes of testimony, 2/3/14 at 6, 10-11.) In addition, appellant was no longer working at DirectTV as of August 2013. (*Id.* at 29.) The trial court found that appellant intentionally misrepresented his educational and employment record. Regarding appellant's claim that this is his first revocation, as described above, his intermediate punishment was

revoked in March 2002. We also note that appellant was charged in April 2014 with access device fraud, theft by unlawful taking, and theft by receiving stolen property. The new charges relate to an incident on or about December 17, 2013, wherein appellant fraudulently transferred money from the victim's credit card account to his Paypal account. (***See*** supplemental Rule 1925(a) opinion, 5/6/14, Exhibit A.)

As the trial court has filed a thorough, comprehensive, 17-page opinion, with appropriate citation to the record and to relevant case law, explaining why appellant does not raise a substantial question for our review; or, in the alternative, why the trial court did not abuse its discretion in fashioning appellant's sentence upon revocation of his probation, we will affirm on the basis of that opinion.

Judgment of sentence affirmed.


Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/15/2015

COMMONWEALTH OF PENNSYLVANIA

v.

KENNETH NYBERG, DEFENDANT

: IN THE COURT OF COMMON PLEAS
: OF ERIE COUNTY, PENNSYLVANIA
: CRIMINAL DIVISION
:
: DOCKET NOS.: 2301, 2357, 2507-2529
: 2616, 2815-2817, 2867, 3118, and
: 3297 of 2001

## RULE 1925(b) OPINION

Appellant, Kenneth Nyberg, filed a Notice of Appeal on February 24, 2014, from the judgment of sentence imposed after the second time he was revoked from probation. Appellant filed a Concise Statement of Matters Complained of on Appeal on March 7, 2014. This Opinion is in response thereto.

## PROCEDURAL BACKGROUND

On November 30, 2001, Appellant pled guilty to a voluminous set of charges involving insurance fraud, access device fraud, drug paraphernalia, bad checks, theft by deception and theft by receiving stolen property at the above docket numbers and at Docket Number 1623 of 2001. There were at least 16 victims in these cases. Appellant faced a total maximum sentence of 158 years of incarceration and $317,500 in fines. *Plea Hearing, November 30, 2001, p. 8.* He owed restitution in the amount of $8,233.63. *Id.*

After his pleas, Appellant was immediately sentenced to intermediate punishment and/or probation. As part of his sentence, Appellant was accepted into the Erie County Treatment Court program for rehabilitation from a cocaine addiction. Appellant lasted some three months in the Erie County Drug Treatment program before being discharged for non-compliance.

1

On March 15, 2002, Appellant was revoked from intermediate punishment and/or probation at the above dockets and Docket Number 1623-2001. Appellant was sentenced at Docket Number 1623 of 2001 to a period of incarceration and probation. On all of the other dockets, the original terms of probation were re-imposed.

On March 25, 2002, Appellant filed a Motion to Modify Sentence which was denied by Order dated March 27, 2002. On April 19, 2002, Appellant filed a Notice of Appeal at Superior Court Docket Number 696 WDA 2002. Appellant alleged his sentences were excessive and the consecutive sentencing scheme constituted an abuse of discretion. The Superior Court affirmed Appellant's sentences by Memorandum Opinion on January 28, 2003, a copy of which is attached hereto.

While on state and county community supervision, Appellant continued to abuse cocaine and any rehabilitative opportunities. Appellant did not pay any restitution to his many victims. As a result, Appellant was revoked from the probationary sentences which had been re-imposed following his first revocation.

The initial revocation hearing was held on January 29, 2014 and continued until February 3, 2014 to address the issue of restitution. Appellant was revoked and resentenced on February 3, 2014. Subsequently, it was discovered that not all of the outstanding docket numbers were presented by the Commonwealth on February 3, 2014. Hence, on February 4, 2014, another Probation Revocation Hearing was held resulting in Appellant's revocation and resentencing on the remaining docket numbers.

At the revocation proceedings, Appellant advocated for a reduction in his total sentence given his age and life circumstances. This Court concurred and Appellant received a significant reduction in his aggregated sentence for his second revocation.

Appellant filed a Motion for Reconsideration on February 13, 2014, alleging it was inappropriate to question Appellant's veracity regarding his enrollment at Gannon University. Because of Appellant's dishonesty under oath regarding his status as a current college student, coupled with his representations that he was working full-time and had paid thousands of dollars of restitution, all of which were untrue, the Motion for Reconsideration was denied.

Appellant filed a Notice of Appeal on February 21, 2014 and a 1925(b) Statement of Reasons Complained of Appeal on March 7, 2014. Appellant does not challenge the legality of the sentence but claims it was "grossly excessive and unreasonable."

### WHETHER APPELLANT RAISES A SUBSTANTIAL QUESTION TO REVIEW THE DISCRETIONARY ASPECTS OF THE SENTENCE

For several decades, Appellant has been deceitful with his many victims; with his State and County Parole/Probation Officers; with his treatment providers; with this Court and now on appeal.

Appellant attempts to paint a picture that his present sentence denies him the opportunity to live up to his potential as a college student who earnestly desires to work and repay his victims. As the record reflects, the truth is that Appellant's core dishonesty and cocaine use are what got him into the criminal justice system and are keeping him there.

Contrary to Appellant's assertion, this is not his first revocation.[1] It is based on similar acts of dishonesty, continued use of cocaine, unwillingness to engage in any meaningful rehabilitation and failure to pay even a token amount of restitution.

---

[1] It is inexplicable why Appellant continues to make this representation on appeal when it is unsupported by the public record and counsel was informed of Appellant's prior revocation at the hearing on January 29, 2014. *See p. 10.* The transcripts from Appellant's original plea/sentencing on November 30, 2001 and his subsequent revocation on March 15, 2002 are part of the reproduced record herein.

3

Appellant originally faced 158 years of incarceration. Despite his two revocations, this Court reduced Appellant's prior sentences. A total of 22 dockets involving 31 counts were changed from his first revocation sentence to run concurrent rather than consecutive. Appellant's sentence now totals 11 ½ to 23 months followed by 18 years of probation.

It is misleading for Appellant to say his sentence is "11 ½ - 23 months incarceration followed by 30 ½ years of probation." *Statement of Matters, ¶ 9.* It is disingenuous for Appellant to aver "The Trial Court sentenced the Defendant to an aggregate sentence of 11 ½ to 23 months incarceration, followed by approximately eighteen years of consecutive probationary sentences and 30 ½ years of concurrent probationary sentences." *Statement of Matters, ¶ 1.*

The 30 ½ years of probation were run concurrent to the 18 years. Appellant's aggregated period of probation is 18 years, not 30 ½ years or 48 ½ years. After Appellant's second revocation, his split sentence of 20 years of a possible 158 years maximum was not excessive, especially since it involved 16 victims.

This appeal presents the anomalous situation where Appellant is appealing a sentence which is significantly less than his prior sentence which was affirmed by the Superior Court. Appellant challenged his first revocation sentence as being manifestly excessive, which argument was rejected by Superior Court. A fortiori Appellant's present sentence cannot be manifestly excessive.

Further, as explained to Appellant, once he demonstrated a period of stable sobriety and repaid his victims, he could seek an early discharge from the present sentence. These incentives were put in place despite the fact Appellant blatantly lied under oath throughout the revocation proceedings.

4

Appellant contends that his sentences are grossly excessive and unreasonable because there was a failure to consider his age; this was his first revocation; Appellant had not incurred any new charges; Appellant is a non-violent offender; Appellant is willing to pay restitution; Appellant should be able to go to college and Appellant has a long-term addiction to cocaine for which he accepted responsibility. *Statement of Matters, ¶ 10-17.* None of these allegations are supported by the record.

Obviously Appellant's age was considered when this Court reduced Appellant's aggregate sentence. *Revocation and Sentencing Transcript, February 3, 2014, p. 33.* At age 47, Appellant cannot continue to abuse cocaine, refuse treatment and then use his age as a purported mitigating factor.

Regarding new crimes, Appellant ignores the fact that the possession and use of cocaine is illegal, which he had done repeatedly prior to each of his revocations. While it is true Appellant's crimes are non-violent, he has at least 16 victims whom he has made no meaningful effort to repay since 2001. Appellant's claim of gainful employment with DIRECTV was never corroborated. To the contrary, Appellant's probation officer learned Appellant was fired from DIRECTV in mid-August, 2013, over four months prior to the revocation proceeding. Appellant was not a current student at Gannon University as he represented under oath. While Appellant admitted his probation violations of using cocaine, historically he has lied to his probation officers when he denied using cocaine.

In sum, Appellant is seeking to re-litigate his sentence by attempting to foist upon the Superior Court factual allegations which are untrue. Importantly, none of what Appellant argues establishes a substantial question preserving a challenge to the discretionary aspects of his sentence.

5

Appellant cannot establish that his sentence violates any provision of the Sentencing Code or is contrary to the fundamental norms underlying the sentencing scheme. Appellant's sentence at Docket Number 2816 of 2001 was in the standard range; all of Appellant's remaining sentences were in the mitigated range of the sentencing guidelines even though the guidelines do not apply to a second revocation.

This Court could not agree to Appellant's request to receive a discharge on "all remaining dockets." *Revocation and Sentencing Transcript, February 4, 2014, p. 7.* Such a request was untenable as it re-victimizes the victims and rewards Appellant for his continual non-compliance.

A challenge to the consecutive nature of Appellant's sentences does not raise a substantial question. *Commonwealth v. Hoag,* 665 A2d. 1212, 1214 (Pa. Super 1995). Accordingly, Appellant has failed to raise a substantial question entitling him to appellate review of the discretionary aspects of his sentence.

## WHETHER APPELLANT'S SENTENCE IS MANIFESTLY EXCESSIVE

Assuming arguendo Appellant has preserved a challenge to the discretionary aspects of his sentence, on the merits this appeal is unsustainable.

At the time of Appellant's plea in November, 2001, he asked for admission into the Erie County Treatment Court Program because of his abuse of cocaine. Appellant represented to this Court, "[m]y biggest drive is getting clean again and my abstinence from using cocaine, which is the only drug if you are able to take that out of the equation my introduction of that years ago, then I would have basically never come into trouble. My father's backing me 100%. I live with him. ...and I hurt my father out of it." *Id. p. 21.*

At the time Appellant was making these representations, Appellant had a history of failed rehabilitative attempts. Nonetheless, this Court gave Appellant another chance at rehabilitation.

6

Instead of further incarceration, this Court imposed sentences of intermediate punishment and/or probation and admitted Appellant into the Erie County Treatment Court Program where he would be surrounded with all of the resources he needed to address his cocaine addiction. Each of Appellant's sentences were in the standard or mitigated ranges of the sentencing guidelines.

This Court presides over the Erie County Treatment Court Program and therefore worked with Appellant on a weekly basis from the time of his admission on November 30, 2001 until his eventual revocation on March 15, 2002. As the record reflects, it was a close call whether to admit Appellant into the Erie County Treatment Court Program in lieu of further incarceration in 2001. From the outset of his time in Treatment Court, Appellant was not honest with his probation officer nor with treatment opportunities. Despite being detained and given additional chances, he continued to use cocaine and was discharged as unsuccessful from treatment programs. *Drug Court Revocation Transcript, March 15, 2002, pp. 13-16.*

During this time period, it was readily apparent Appellant had no desire to change his lifestyle. There was no choice but to revoke Appellant from Treatment Court and re-sentence him. As Appellant was advised then, he was not being honest. Following his first revocation, Appellant was sentenced to a period of state incarceration followed by extended probation.

Fast forward to the present revocation. Like his first revocation, Appellant was continually using cocaine. He was discharged as unsuccessful from treatment programs, largely because he failed to attend treatment. Please review the detailed chronology of Appellant's continual non-compliance with his State and County supervision at pages 21-27 of the Revocation and Sentencing Hearing Transcript on February 3, 2014.

Hence, as he stood in court in 2014, Appellant's behavior had not changed since the time he was admitted into the Erie County Treatment Court Program in November, 2001.

Equally concerning were the number of intentional lies Appellant stated under oath during the present revocation as well as his lack of effort to pay restitution to his victims.

Appellant's first lie was when he told his lawyer he was a current, full-time student attending Gannon University. Specifically, Appellant's counsel represented as follows:

> **MS. KRUPICZ: Mr. Nyberg is actually going to Gannon University. He's a junior in college right now. He's been going full-time for about, I believe two and a half to three years. He's got this semester and one year left prior to graduating. He is going for political science. He actually wants to go to law school, Your Honor. His cumulative GPA there is 3.82. As I said, he is a full-time student.**

*Revocation Transcript, January 29, 2014, p. 8. (Emphasis added).*

Clearly Appellant, through his attorney, was representing that he was a current, full-time student at Gannon University for two and one half to three years, that he was a political science major with a high GPA who was on pace to graduate and perhaps attend law school.[2] Very little of this representation was accurate. To his credit, Appellant was enrolled on a full-time basis as an undergraduate for the 2009 fall semester at Gannon University as well as the Spring and Fall semesters of 2010 covering the time period of August 6, 2009 through December 17, 2010. To his knowledge, and contrary to his representation, Appellant had not been a full-time student at Gannon since December 17, 2010. *See Commonwealth Exhibit 1, Monday, February 3, 2014 at p. 6.*

When confronted about his blatant misrepresentation, Appellant changed his story to say that he could not continue at Gannon in 2010 because he was incarcerated. *Revocation and Sentencing Transcript, Monday, February 3, 2014 at p. 6.* ("When I discussed this with Mr. Nyberg, he had become incarcerated at that time…".) There is no corroboration for Appellant's representation that he was incarcerated in 2010. To the contrary, Appellant had previously

---

[2] The Commonwealth's attorney was likewise left with this impression. *Revocation and Sentencing Transcript, February 3, 2014, p. 30.*

8

represented that he finished his parole period without reference to any incarceration. *Revocation Transcript, January 29, 2014 at p. 11.* He also was purportedly attending Gannon full-time throughout 2010.

Appellant's third version about college was that he would have been a full-time Gannon student but for his incarceration on January 2, 2014. Appellant did produce a letter from a Gannon faculty member indicating there were discussions with Appellant about his return to Gannon. Nothing in this letter established that in fact Appellant was enrolled for the Winter, 2014 semester, nor did Appellant present any evidence from any Gannon office (e.g. Registrar's Office) establishing he was registered for the Winter, 2014 term.

Hence, the actual facts were that Appellant knew he was not a current Gannon student on January 29, 2014 when he made his blatantly false representation through his counsel. In fact, Appellant had not been a full or part-time student at Gannon for more than three years. While it is true Appellant may have the possibility of returning to Gannon in the future, this possibility does not absolve Appellant of his varied falsehoods.

Another area of dishonesty by Appellant related to restitution. Initially, Appellant's counsel represented as follows:

> **MS. KRUPICZ: I would like to point Your Honor to the fact that Mr. Nyberg no longer owes any restitution.**
>
> **THE COURT: Well, how did that—when did that come about, 'cause what I--**
>
> **MS. KRUPICZ: Your Honor, I looked up these dockets, and I couldn't find anything regarding restitution.**

*Revocation Transcript, January 29, 2014, p. 11. (Emphasis added).*

When this representation was questioned by this Court, Appellant's counsel responded that Mr. Nyberg **"paid thousands of dollars towards his restitution. He doesn't have the**

9

documentation today. I'm not sure if that's at his father's house. That certainly is something that I can discuss with him after court." *Id. p. 12. (Emphasis added).*

In fairness to Appellant, the hearing was continued so that he could secure any documents establishing that he had paid thousands of dollars toward his restitution. Separately, the probation officer attending the hearing was not familiar with Appellant's payment history, although the probation officer stated, "I would always ask Mr. Nyberg, are your costs, fines and restitution up to date, and he would say yes." *Id. p. 12.*

At the next hearing on Monday, February 3, 2014, Appellant did not produce any documentation substantiating the representation that he had paid restitution in full or that he paid thousands of dollars in restitution. In fact, he did not proffer any evidence of any restitution payments. Appellant's father was present at the January 29, 2014 and February 3, 2014 hearings and could have assisted him in locating any supporting documents.

The Supervisor for the Collections Department of Adult Probation testified that since 2001, Appellant has paid a total of $135 towards his fines, costs and restitution. Of this amount, a total of $40 was designated for restitution. *Revocation and Sentencing Transcript, Monday, February 3, 2014, pp. 12-18.* Hence, the truth is that since 2001, Appellant paid $40 of the $8,233.63 in restitution he owes to his 16 victims. He still owes restitution in the amount of $8,193.63.

On appeal, Appellant minimizes his crimes by claiming the vast majority are "over small amounts of money owed to grocery stores and pizza establishments." *Statement of Matters, ¶*

10

13. Contrary to this representation, there are a variety of small business owners whose cash flows were affected by Appellant's dishonesty.[3]

The only time Appellant has paid restitution was when it was taken from his prison account. *Revocation and Sentencing Transcript, February 3, 2014 at pp. 14-16.* For all the time he was in the community and while he was gainfully employed, Appellant did not pay a penny towards any of the restitution he owes to his many victims. *Id. pp. 17-19.* Meanwhile, Appellant had the wherewithal to support his cocaine habit. Appellant's failure to make any meaningful effort to pay restitution was an appropriate factor in his present sentence.

A third area of concern regarding Appellant's dishonesty was his purported employment. Appellant and his counsel wanted this Court to believe that he was working full-time in an administrative capacity for DIRECTV:

> **MS. KRUPICZ: In addition to going to school, and, you know, taking night classes all of the time, he is working as a regional director at DIRECTV. He's been working there for several years. He's on the administrative side of things. He basically does the paperwork and manages some people underneath him who sell cable television to residents of the community.**
>
> **THE COURT: How long have you been working there?**
>
> **THE DEFENDANT: In April was a year. In--**
>
> **MS. KRUPICZ: Okay. In April, it's one year, Your Honor. Regarding--**
>
> **THE COURT: And that's full-time, Mr. Nyberg?**
>
> **THE DEFENDANT: Yes, sir.**

*Revocation Transcript, January 29, 2014, p. 8. (Emphasis added).*

At the continued Revocation hearing held three business days later, Appellant and his counsel represented as follows:

---

[3] In addition to pizza shops and grocery stores, Appellant victimized Wheels Bike Shop, Yaples Vacuum Sales, Sleep Gallery, Beer 4 Less, Lake Country Bike Shop, Buzz 'n Bees, Midtown Bike Shop, Cohen's Carpets, Sea Cave and Richard Schultz.

> Mr. Nyberg wants Your Honor to know, as we had discussed last time, he was gainfully employed at DIRECTV selling cable and managing--doing the administrative side of managing people who were also selling cable. He believes that with his salary from there that even with the eight thousand dollar figure he could pay that off in about a matter of a year and a half if Your Honor would give him the opportunity to do that.

*Revocation and Sentencing Transcript, February 3, 2014, pp. 5, 6. (Emphasis added).*

At no time during any of the three hearings did Appellant introduce any corroboration for his representation that he was a full-time employee with DIRECTV since April of 2013. No one from DIRECTV testified to this fact nor did Appellant proffer, as is common in sentencing proceedings, an authenticated letter from his employer setting forth his employment status. Appellant never proffered a pay stub or a W-2 wage tax form from DIRECTV.

Unfortunately for Appellant, his probation officer, as part of his normal duties, attempted to confirm Appellant's employment status with DIRECTV. His probation officer learned that Appellant was "let go" from DIRECTV in mid-August, 2013. *Revocation and Sentencing Transcript, February 3, 2014, p. 29.* Appellant's probation officer was not aware of any other employment for Appellant. *Id.*

When given the opportunity, Appellant did not question the testimony of the probation officer or offer any rebuttal thereto. *Id.* Accordingly, there is a legitimate basis to disbelieve Appellant's representation that he was a full-time supervisor at DIRECTV who was capable of paying restitution to his victims within the next eighteen months.

What struck this Court as odd and unlikely on January 29, 2014 was Appellant's apparent attempt to represent that he was both a full-time student at Gannon and a full-time employee at DIRECTV. *Revocation Transcript January 29, 2014, p. 8.* As it turns out, neither representation was true. What is true is that while employed at DIRECTV, Appellant made no payments on restitution.

12

Despite Appellant's deceit and attempted manipulation throughout these revocation proceedings, upon resentencing this Court imposed an aggregate sentence reducing the total amount of supervision from Appellant's prior revocation sentence which had been affirmed by the Superior Court. In addition, Appellant was provided with an incentive to finally become compliant with the terms of his sentence. If Appellant could sustain sobriety and repay restitution, he would receive an early discharge from his sentence.

THE COURT: Counsel, anything else?

MS. KRUPICZ: Judge, we would just reiterate our prior requests and ask Your Honor in the interest of judicial economy to consolidate the dockets and give Mr. Nyberg an opportunity to comply with a strict payment plan to get some of this restitution back.

THE COURT: Well, it's interesting that you use the phrase judicial economy because if we had judicial economy here, Mr. Nyberg, your case could have been over with, you know what I mean?

THE DEFENDANT: No, sir.

THE COURT: Well, I took you into treatment court at the end of 2001 and that was on a whole-- as you can see, a whole lot of criminal activity in which you ripped off a whole lot of people.

THE DEFENDANT: Yes, Your Honor.

THE COURT: And rather than send you to jail at that point we gave you community supervision and an opportunity to address a cocaine issue and an opportunity to make your victims whole. And to do something with your life with the hope that you would get through treatment court, graduate get the restitution paid and you could have your-- get an early discharge from your supervision and you wouldn't be here.

THE DEFENDANT: Yes, Your Honor.

THE COURT: Do you understand that?

THE COURT: That's judicial economy. And you, quite honestly, have chosen to do just the opposite. And I'm very, very, very disappointed here, Mr. Nyberg. When I took you into treatment court you lasted about three months and part of

13

the reason is you just continued to use despite all the treatment that was available to you and all the services that were available to you.

Now having said that, I understand we've had people that have had short stints in treatment court because they continue to use, and you get revoked, and you are then incarcerated. And I guess what's most telling is when you get out from the incarceration you basically return to the same lifestyle where you're continuing to use. Now I will give you credit. The records show that for a period of time from 2009 through 2010 you were an undergraduate at Gannon, which is good. You have some ability to work. I don't question what your father is saying in terms of your help for your father, but I do question this.

THE DEFENDANT: Yes, sir.

THE COURT: You knew you were under supervision. You owed over eight thousand dollars to people and entities you ripped off.

THE DEFENDANT: Yes, sir.

THE COURT: And you paid a total of forty dollars to those folks.

THE DEFENDANT: Can I –

THE COURT: I'm not going to argue with you.

THE DEFENDANT: No, sir.

THE COURT: Because the record is what it is.

THE DEFENDANT: Yes, Sir.

THE COURT: And when you're working and you had some money, you're choosing to use cocaine. And what that tells me is you're not amenable to treatment, you haven't learned much and you'll continue that lifestyle. And I can understand the impression that your probation officer has. Your state parole officer didn't do you any favors by just keep winking at what you were doing, but your behavior basically just continued while you were on county supervision. And I think you just expected the same lackadaisical response that your state PO had, quite honestly, that's not acceptable.

THE DEFENDANT: No, sir.

THE COURT: And you're old enough and smart enough, you should know better, quite honestly. But your behavior tells me that you have no interest in changing your lifestyle. And it's just deplorable that there are one, two, three, four, five, six, seven, eight, at least nine victims here by my count who have been out of the money since at least 2001.

14

THE DEFENDANT: Yes, sir.

THE COURT: And you could care less about them.

. . . .

What I've done in fashioning a sentence is accommodate counsel's request for a reduction in the overall supervision which is a break to you. But I fashioned it this way so that it gives you an amount of time to pay restitution because your track record is over thirteen years here in paying forty dollars tells me that you have a long ways to go to pay off these people that you ripped off.

*Revocation and Sentencing Transcript, February 3, 2014, pp. 30-34, 36.*

On the third day of Appellant's revocation hearings, Appellant was informed:

MR. RICHMOND: Judge, I'd like to believe what Mr. Nyberg is saying here is truthful, but the track record would make you look at what he's saying today with at least a jaundiced eye. Otherwise, Judge, I have no further comments to make to the Court at this time. Thank you.

THE COURT: Well, I'll reiterate what I said on prior occasions for the purpose of the sentence, and I do note in addition to that is that there is a lot of restitution here. There are a lot of people that have been victimized and this goes way back a long period of time. And that you've only paid forty dollars of restitution and yet you've continued to engage in behavior where you're spending money on yourself for drugs when you could be spending money on paying the victims back in your case, and that you've proven non-amenable to treatment over an extended period of time.

I also - - and you need to understand me, Mr. Nyberg. In case you didn't do the math yesterday, I'm making a serious reduction in the overall amounts of supervision. And I don't think you understand that, but you need to understand that. I'm still, in the way I'm going to fashion this sentence, going to have an extended period of supervision. Because, quite honestly, given your track record, that's what it's going to take to hold you accountable and to make sure the victims get paid back.

*Revocation and Sentencing Transcript, February 4, 2014, pp. 9-10.*

Lastly, Appellant was provided with this incentive and hope:

THE COURT: .... And I know this does provide an extended period of supervision. It would be my hope that you turn – do a dramatic change in your life, Mr. Nyberg, that I get an request down the road from probation for an early discharge, which we could then entertain to reduce your sentence, but that's

15

entirely up to what you do and whether you live up to the things you say you're going to do.

...

MS. KRUPICZ: Judge, if I may, just to make it clear for Mr. Nyberg. I believe what Your Honor is saying is that if Mr. Nyberg gets the restitution to zero balance and has no violations of any kind that Your Honor would consider perhaps an early discharge.

THE COURT: That's correct.

MS. KRUPICZ: So that's good.

THE COURT: Court's in recess.

MS. KRUPICZ: Thank you, Judge.

*Revocation and Sentencing Transcript, February 4, 2014, pp. 12-13.*

## CONCLUSION

Appellant appeared at sentencing on November 30, 2001 with a host of crimes involving dishonesty. He victimized 16 different victims, most on multiple occasions. He also presented with a long-standing cocaine addiction. His original sentence on November 30, 2001, released Appellant from jail and allowed him to return to the community. Appellant was given access to all of the rehabilitative resources he needed and an opportunity to establish an employment and/or educational history. Had Appellant complied, his cases could have been discharged by now.

For Appellant, it is his conduct and not his testimony that matters. He did not engage in any meaningful attempt at recovery in the Erie County Treatment Court Program and was revoked within four months.

The reasons for his revocation in 2002 are similar to the reasons for his second revocation in 2014. Appellant continues to abuse cocaine. Appellant continues to be unwilling to invest in

16

his rehabilitative treatment, which he sorely needs. Appellant has no interest in making his victims whole. While Appellant has the intelligence to hold gainful employment and secure a college degree, his choices and conduct have sabotaged his potential.

Clearly Appellant was dishonest throughout these entire revocation proceedings. Despite Appellant's deceit, he received a reduced sentence with a continuing opportunity for an early discharge. In fact, in less time than it will take to decide this appeal, Appellant will be in the community with an opportunity to be gainfully employed and/or attend college.

BY THE COURT:

Date: 4/22/14

WILLIAM R. CUNNINGHAM, JUDGE

cc: District Attorney's Office
Maria Krupicz, Esquire, Public Defender's Office, 509 Sassafras Street, Erie, PA 16507

17

COMMONWEALTH OF PENNSYLVANIA,      :    IN THE SUPERIOR COURT OF
                                   :       PENNSYLVANIA
                Appellee           :
                                   :
        v.                         :
                                   :        1623/01
KENNETH E. NYBERG,                 :
                                   :
                Appellant          :        No. 696 WDA 2002

Appeal from the Judgment of Sentence entered on March 15, 2002, in the Court of Common Pleas of Erie County, Criminal Division, at No(s). 2507-2529, 2616, 2815, 2816, 2867, 3118 & 3297 of 2001, NOS. 1623, 2301, 2302, 2357.

BEFORE:  LALLY-GREEN, TODD, and POPOVICH, JJ.

                                   **F I L E D** JAN 2 8 2003
MEMORANDUM:

Appellant, Kenneth E. Nyberg, appeals *nunc pro tunc* from the judgment of sentence entered on March 15, 2002, after revocation of intermediate punishment. We affirm.

The trial court found the following facts:

> On November 30, 2001 Appellant pled guilty to insurance fraud and writing a plethora of bad checks at the above docket numbers and was placed on intermediate punishment. Appellant was accepted into the Erie County Treatment Court for rehabilitation from his addiction to cocaine. Appellant was accepted as a borderline case given the numerous charges he faced along with the gravity of the offenses.
>
> On March 15, 2002 Appellant was revoked from intermediate punishment. Appellant was sentenced at Docket Number 1623 of 2001 to three and one half to seven years of incarceration and at Docket Number 2302 of 2001 to two and one half to five years incarceration consecutive to Docket Number 1623 of 2001. At the remaining docket

numbers Appellant's original probationary periods were reinstated. On March 25, 2002 Appellant filed a Motion to Modify Sentence which was denied by Order dated March 27, 2002. On April 19, 2002 Appellant filed a Notice of Appeal. On May 7, 2002 counsel for Appellant filed a Preliminary Statement of Matters Complained of on Appeal. Unfortunately, Appellant's counsel lost his wife and was given an extension of time to file a Final Statement of Matters.

On June 5, 2002 Appellant was granted new counsel and leave to file an appeal nunc pro tunc. On June 6, 2002 Appellant filed an Amended Notice of Appeal Nunc Pro Tunc. On June 13, 2002 Appellant filed a Final Statement of Matters which adopted prior counsel's Preliminary Statement of Matters. In that Statement of Matters Appellant alleges his sentence was excessive and not supported by the record.

Trial Court Opinion, 6/24/02, at 1-2.

Appellant raises the following issue on appeal:

Was the sentence manifestly excessive and was the discretion to sentence consecutively abused?

Appellant's Brief at 4.

We review this issue with the following law in mind. An intermediate punishment sentence may be revoked where the specific conditions of the sentence have been violated. *Commonwealth v. Philipp*, 709 A.2d 920, 921 (Pa. Super. 1998). Upon revocation, the sentencing alternatives available to the court shall be the same as the alternatives available at the time of initial sentencing. *Id.* Resentencing following revocation of intermediate punishment is analogous to resentencing following revocation

2

of probation. *Commonwealth v. Serrano*, 727 A.2d 1168, 1169 n.4 (Pa. Super. 1999). "It is often noted that our scope of review following a sentence imposed after revocation of probation is limited to the validity of the revocation proceedings and the legality of the final judgment of sentence." *Commonwealth v. Sierra*, 752 A.2d 910, 913 n.6 (Pa. 2000). On the other hand, this Court has held that this statement of our scope of review is unduly narrow, and that a defendant may also challenge the discretionary aspects of the sentence following probation revocation. *Id.* Here, Appellant challenges the discretionary aspects of sentencing.

In addressing Appellant's claims, we are aware that "the right to appeal a discretionary aspect of sentence is not absolute." *Commonwealth v. Barzyk*, 692 A.2d 211, 216 (Pa. Super. 1997); *see also*, 42 Pa.C.S.A. § 9781(b). A party who desires to raise such a challenge must petition this Court for permission to appeal and demonstrate that there is a substantial question that the sentence is inappropriate and warrants appellate review. 42 Pa.C.S.A. § 9781(b); *Commonwealth v. Tuladziecki*, 522 A.2d 17 (Pa. 1987). Defendants have an opportunity for appellate review of an appeal from a discretionary aspect of sentencing if they establish that their challenge involves a substantial question suitable for appellate review. *Commonwealth v. Mouzon*, 2002 Pa. LEXIS 2758 (decided December 19, 2002) (if an appellant complies with statutory and procedural requirements regarding a challenge to the discretionary aspects of sentencing and

3

articulates a substantial question, Superior Court must review the trial court's exercise of discretion).

"The determination of whether a particular issue constitutes a substantial question as to the appropriateness of sentence must be evaluated on a case-by-case basis." *Commonwealth v. Barzyk*, 692 A.2d 211, 216 (Pa. Super. 1997) (citation omitted). A substantial question exists where "an aggrieved party can articulate clear reasons why the sentence imposed by the trial court compromises the sentencing scheme as a whole." *Id.* Thus, in order to raise a substantial question, Appellant must advance a colorable argument that "the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." *Id.*

The party seeking to appeal the discretionary aspect of sentencing must first include in his or her brief a concise statement of the reasons relied upon in support of the petition for allowance of appeal. Pa.R.A.P. 2119(f). Rule 2119(f) "Argument" provides as follows:

> **(f) Discretionary Aspects of Sentence.** An appellant who challenges the discretionary aspects of a sentence in a criminal matter shall set forth in his brief a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of a sentence. The statement shall immediately precede the argument on the merits with respect to the discretionary aspects of sentence.

4

Pa.R.A.P. 2119(f). *See also, Commonwealth v. Martin*, 727 A.2d 1136, 1143 (Pa. Super. 1999), *appeal denied*, 745 A.2d 1220 (Pa. 1999).

We clarified what is required by Rule 2119(f) in *Commonwealth v. Goggins*, 748 A.2d 721 (Pa. Super. 2000):

> Rule 2119(f) requires only that a concise statement of reasons relied upon for allowance of appeal allow us to determine the allegation of trial court error and the immediate context of the allegation as it relates to the prescribed sentencing norms. Thus, **the Rule 2119(f) statement must specify where the sentence falls in relation to the sentencing guidelines and what particular provision of the code is violated** (e.g., the sentence is outside the guidelines and the court did not offer any reasons either on the record or in writing, or double-counted factors already considered). Similarly, **the Rule 2119(f) statement must specify what fundamental norm the sentence violates and the manner in which it violates that norm** (e.g., the sentence is unreasonable or the result of prejudice because it is 500 percent greater than the extreme end of the aggravated range). If the 2119(f) statement meets these requirements, we can decide whether a substantial question exists. ...

*Id.* 748 A.2d at 727 (emphasis added).

As required by Pa.R.A.P. 2119(f), *Tuladziecki* and *Goggins*, Appellant has included in his brief a separate statement of reasons relied upon for this appeal. Appellant argues in his 2119(f) statement that the court abused its discretion in the following three instances: 1) by relying on impermissible factors in fashioning the sentence; 2) by imposing consecutive sentences; and 3) by failing to state the reasons for the sentence on the record. Appellant's 2119(f) statement, thus, meets the requirements of

*Goggins*. These claims challenge the discretionary aspects of sentencing. We next consider whether these three claims present a substantial question for our review.

Appellant first argues that the trial court abused its discretion by relying on impermissible factors in fashioning the sentence. Appellant asserts that "the Court must have considered some impermissible factor in choosing this sentence." Appellant's Brief at 15-16. Appellant, however, fails to articulate the impermissible factor(s) upon which the trial court relied. Again, a substantial question exists where an aggrieved party can articulate clear reasons why the sentence imposed by the trial court compromises the sentencing scheme. *Barzyk*. Appellant failed to articulate any clear reasons as to how the trial court erred in imposing the sentence. Appellant, thus, failed to present a substantial question for our review. We, thus, do not address Appellant's issue of whether the trial court abused its discretion by relying on impermissible factors.

Appellant next argues that the trial court abused its discretion by imposing consecutive sentences. A challenge to the court's imposing consecutive, rather than concurrent, sentences does not present a substantial question regarding the discretionary aspects of sentence. *Commonwealth v. Hoag*, 665 A.2d 1212, 1214 (Pa. Super. 1995) (determining that a challenge to a sentence on the basis of consecutive sentencing does not present a substantial question regarding the

6

Circulated 03/31/2015 04:04 PM

discretionary aspects of sentencing). We, thus, do not address Appellant's issue of whether the trial court abused its discretion in imposing a consecutive sentence.

Appellant finally argues that the trial court abused its discretion by failing to state the reasons for the sentence on the record. An allegation that the trial court abused its discretion by failing to state the reasons for the sentence on the record presents a substantial question for our review. *Commonwealth v. Wagner*, 702 A.2d 1084, 1085 (Pa. Super. 1997) (determining that discretionary aspect that the sentencing court failed to state the reasons for the sentence on the record presents a substantial question for review). We, thus, address Appellant's issue of whether the trial court abused its discretion by failing to state the reasons for the sentence on the record.

Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. *Commonwealth v. Hess*, 745 A.2d 29, 31 (Pa. Super. 2000). The discretion of the sentencing court is accorded great weight as it is in the best position to view the defendant's character, displays of remorse, defiance or indifference, and the overall effect and nature of the crime. *Commonwealth v. Brown*, 741 A.2d 726, 735 (Pa. Super. 1999), appeal denied, 790 A.2d 1013 (Pa. 2001). An abuse of discretion is more than just an error in judgment and, on appeal, the trial court will not be found to have

7

abused its discretion unless the record discloses that the judgment exercised

was manifestly unreasonable, or the result of partiality, prejudice, bias, or

ill-will. *Hess*; *Commonwealth v. Burkholder*, 719 A.2d 346, 350 (Pa.

Super. 1998).

Our review of the record reflects that the sentencing court considered

a number of factors for imposition of sentence on Appellant. The sentencing

court offered the following commentary at the revocation hearing:

> THE COURT: When we admitted you to drug court, Mr. Nyberg, I represented to you that you were on very thin ice. You had a ton of charges. You had ripped off a lot of people. And it was a very close call whether to even admit you to drug court, and I told you that at the time. In fact, for purposes of this proceeding, I'm going to incorporate the record from December 28th of 2001, as well as the record of any drug court proceedings involving Mr. Nyberg. You were in jail at the time we admitted you to drug court, do you remember that?
>
> * * *
>
> THE COURT: We got you into treatment, which didn't start off good because you missed an orientation and a urine, but then eventually you got into treatment. But it didn't take you long, basically the first opportunity you got you went out and used again. So we incarcerated you on January 24th of 2002, and to be honest with you, we could have been justified at that point to just revoke you and say, look, you were on thin ice anyway, we're not going to devote any more resources to someone who obviously doesn't want to get rehabilitated.
>
> We gave you yet another chance. You were paroled again from prison, propped [sic] into a residential facility on February 21st of 2002, and about twenty days later you're unsuccessfully

8

discharged. You don't even last three weeks into that program.

And you can stand there and say all you want that I need one-on-one treatment, they misunderstood me, but I think it's incredible, and it speaks of what your rehabilitative potential is, the fact that this is now the second time you've been paroled into a treatment plan. And you should have been on your best behavior trying to take advantage of it and it was just the opposite; you get yourself unsuccessfully discharged from the program.

So as you stand there today, I've had the opportunity to observe you. I don't think that you're honest. You've admitted that you lied on January 24th of this year about your usage. I don't think you're honest with yourself, I don't think that you have a lot of rehabilitative potential. I look at the scope and number of people that you victimized in this case, and on behalf of the community I'm not convinced that we need to devote many more rehabilitative resources to you, because I think you'll continue to try to find a way to scam around it.

N.T., 3/15/02, at 14-16.

Here, the sentencing court thoroughly explained the need for fashioning the instant sentence. The sentencing court considered: 1) the nature and number of offenses by Appellant; 2) prior opportunities to get help; 3) Appellant's lack of rehabilitative potential; 4) protection of the community; 5) Appellant's perpetual dishonesty and abuse of the system; and 6) Appellant's lack of amenability to treatment or supervision. All of these considerations were stated on the record and formed the basis for the sentence imposed on Appellant. Accordingly, the sentencing court stated adequate reasons on the record for revocation of Appellant's intermediate

9

punishment and imposition of Appellant's sentence and we accord the sentencing court great weight in it's determination. **Brown**, 741 A.2d at 735. Appellant's claim fails. Thus, we conclude that the sentencing court did not abuse its discretion in formulating Appellant's sentence. Therefore, this claim fails.

Judgment of sentence affirmed.

Judgment Entered:

*Eleanor R. Valecko*

Deputy Prothonotary

Date: **JAN 28 2003**

10

COMMONWEALTH OF PENNSYLVANIA : IN THE COURT OF COMMON PLEAS
:
v. : OF ERIE COUNTY, PENNSYLVANIA
:
KENNETH NYBERG : DOCKET NOS. 2301; 2357; 2507-2529;
2616; 2815-2817; 2867; 3118; 3297-2001

## SUPPLEMENT TO RULE 1925(a) OPINION

In his pending appeal, Appellant alleges that his present sentence is excessive and fails to consider, *inter alia,* that Appellant had not incurred any new charges. *Statement of Matters Complained of on Appeal, Paragraph 12.*

Unbeknownst to this Court at the time the Rule 1925(a) Opinion was prepared, Appellant has pending charges at Erie County Docket Number 818 of 2014 for Access Device Fraud (misdemeanor of the first degree), Theft By Unlawful Taking (misdemeanor of the first degree) and Theft by Receiving Stolen Property (misdemeanor of the first degree.) It is alleged that on or about December 17, 2013, Appellant used a credit card issued to a Matthew Martinson to receive $239.97 in electronic transfers and/or goods.

A copy of the Information filed at Docket Number 818 of 2014 against Appellant is attached hereto as Exhibit A; a copy of the Docket Sheet as Exhibit B. Appellant has been formally arraigned on these charges and is awaiting trial for the May, 2014, term of Criminal Court in Erie County.

BY THE COURT:

Date: 5/6/14

WILLIAM R. CUNNINGHAM, JUDGE

cc: Mark Richmond, Esquire, District Attorney's Office
Maria Krupicz, Esquire, Public Defender's Office

RECORD
MAY 1 4 2014
317 WDA 2014
PITTSBURGH OFFICE OF
SUPERIOR COURT

Supp. Record - 1

COMMONWEALTH OF PENNSYLVANIA   )    IN THE COURT OF COMMON PLEAS

)

KENNETH E. NYBERG          )    NO. 818 of 2014
                            )    T 438166-1

## INFORMATION

The District Attorney of Erie County by this Information charges that on or about DECEMBER 17, 2013, in the said County of Erie and State of Pennsylvania, the said KENNETH E. NYBERG did use an access device to obtain or in an attempt to obtain property or services with knowledge that the access device was issued to another person who has not authorized its use, to-wit: A WIDGET FINANCIAL VISA CREDIT CARD issued to MATTHEW MARTINSON, in that the said KENNETH E. NYBERG did FRAUDULENTLY TRANSFER MONEY FROM THE VICTIM, MATTHEW MARTINSON'S WIDGET FINANCIAL VISA CREDIT CARD ACCOUNT TO THE DEFENDANT'S PAYPAL ACCOUNT IN THE AMOUNT OF $206.10 AND ORDER FOOD FROM GOLDEN WOK IN THE AMOUNT OF $33.87 having a TOTAL VALUE of $239.97 more or less, occurring at 3500 BLOCK OF OAKWOOD STREET, CITY OF ERIE, Erie County, Pennsylvania, AND/OR 430 WEST 8TH STREET, CITY OF ERIE, ERIE COUNTY, PENNSYLVANIA, AND/OR 3202 PITTSBURGH AVENUE, MILLCREEK TOWNSHIP, ERIE COUNTY, PENNSYLVANIA; thereby the said KENNETH NYBERG did commit the crime of ACCESS DEVICE FRAUD, a MISDEMEANOR OF THE FIRST DEGREE.

COUNT TWO:

AND THE DISTRICT ATTORNEY FURTHER CHARGES that on the day and year aforesaid in the said County of Erie and State of Pennsylvania, the said KENNETH E. NYBERG did unlawfully take or exercise control over movable property of another, to-wit: MONEY FROM THE VICTIM'S WIDGET FINANCIAL VISA CREDIT CARD ACCOUNT WHICH HE TRANSFERRED TO HIS PAYPAL ACCOUNT, having a total value of $239.97, more or less, belonging to MATTHEW MARTINSON, occurring at 3500 BLOCK OF OAKWOOD STREET, CITY OF ERIE, Erie County, Pennsylvania, AND/OR 430 WEST 8TH STREET, CITY OF ERIE, ERIE COUNTY, PENNSYLVANIA, AND/OR 3202 PITTSBURGH AVENUE, MILLCREEK TOWNSHIP, ERIE COUNTY, PENNSYLVANIA; with the intent to deprive said owner thereof; thereby the said KENNETH E. NYBERG did commit the crime of THEFT BY UNLAWFUL TAKING OR DISPOSITION, a MISDEMEANOR of the FIRST Degree.



COUNT THREE:

AND THE DISTRICT ATTORNEY FURTHER CHARGES that on the day and year aforesaid in the said County of Erie and State of Pennsylvania, the said KENNETH E. NYBERG did intentionally receive, retain or dispose of movable property of another, to-wit: MONEY FROM THE VICTIM'S WIDGET FINANCIAL VISA CREDIT CARD, WHICH HE TRANSFERRED ' TO THE DEFENDANT'S PAYPAL ACCOUNT IN THE AMOUNT OF $239.97, ,MORE OR LESS, belonging to MATTHEW MARTINSON, occurring IN THE 3500 BLOCK OF OAKWOOD STREET, CITY OF ERIE, EIRE COUNTY, PENNSYLVANIA, AND/OR 430 WEST 8TH STREET, CITY OF ERIE, ERIE COUNTY, PENNSYLVANIA, AND/OR 3202 PITTSBURGH AVENUE, MILLCREEK TOWNSHIP, ERIE COUNTY, PENNSYLVANIA the said KENNETH E. NYBERG knew or had reason to believe that said property was stolen; thereby the said KENNETH E. NYBERG did commit the crime of RECEIVING STOLEN PROPERTY, a MISDEMEANOR OF THE FIRST DEGREE.

All of which is against the Act of Assembly and the peace and dignity of the Commonwealth of Pennsylvania.

(XX)  Notice is hereby given, per Pa.R.Crim.P. 582 (B)(1), that this Information will be tried with any and all other Informations for this defendant.

(XX)  Notice is hereby given, per Pa.R.Crim.P. 582 (B)(1), that your case will be tried together with all co-defendant(s) since you are alleged to have participated in the same act or transaction.

18 P.S. 4106(A)(1)(II)
18 P.S. 3921(A)
18 P.S. 3925(A)

_____          _____  _____
Citation of Statute & Section          Attorney for Commonwealth          Date

2

Circulated 03/31/2015 04:04 PM

No. 818 OF 2014

COMMONWEALTH OF PENNSYLVANIA

v.

KENNETH E. NYBERG

## INFORMATION

**COUNT ONE:**
18 P.S. 4106(A)(1)(II)
ACCESS DEVICE FRAUD
MISDEMEANOR OF THE FIRST DEGREE

**COUNT TWO:**
18 P.S. 3921(A)
THEFT BY UNLAWFUL TAKING
MISDEMEANOR OF THE FIRST DEGREE

**COUNT THREE:**
18 P.S. 3925(A)
RECEIVING STOLEN PROPERTY
MISDEMEANOR OF THE FIRST DEGREE

## PLEA or TRIAL:

AND NOW, THIS ___ DAY OF ___, 2014, I STATE THAT I AM [ ] DEFENDANT [ ]
THIS MATTER AND THAT I HAVE BEEN ARRAIGNED ON THIS C[ ]RGE(S); I AGRE[ ]
MY RIGHTS HAVE BEEN EXPLAINED TO ME AND I HAVE VOL[ ] [ ]RILY CHOSE
TO PLEAD:
GUILTY / NO CONTEST / NOT GUILTY

_____    _____
Defendant                   Attorney for Defendant

## ARD:

AND NOW, THIS ___ DAY OF ___, 2014, I STATE THAT I AM T[ ] DEFENDANT [ ]
THIS MATTER AND THAT I UNDERSTAND THE CHARGE(S) [ ]NST ME; TH
PROVISIONS OF THE ARD PROGRAM HAVE BEEN EXPLAINED [ ] ME AND I A[ ]
WAIVING MY RIGHT TO A SPEEDY TRIAL UNDER RULE 600; [ ]GREE TO AR[ ]
PLACEMENT AND I HEREBY PLEAD GUILTY TO ALL SUMM[ ]Y OFFENSES [ ]
APPLICABLE.

_____    _____
Defendant                   Attorney for Defendant

## PWOV:

AND NOW, THIS ___ DAY OF ___, 2014, I STATE THAT I AM [ ]
THIS MATTER AND THAT I UNDERSTAND THE CHARGES(S) [ ]NST ME; TH
PROVISIONS OF THE PWOV PROGRAM HAVE BEEN EXPLAINED [ ] ME AND I A[ ]
FOREVER WAIVING MY RIGHT TO A JURY TRIAL BY PLEADING CONTEST AN[ ]
REQUESTING PWOV PLACEMENT; I UNDERSTAND THE POS[ ]E MAXIMU[ ]
SENTENCE(S) INVOLVED; I AGREE TO PWOV PLACEMENT AND I [ ] BY PLEAD N[ ]
CONTEST TO THIS CHARGE(S).

_____    _____
Defendant                   Attorney for Defendant

# COURT OF COMMON PLEAS OF ERIE COUNTY
## SECURE DOCKET



**Docket Number: CP-25-CR-0000818-2014**

# CRIMINAL DOCKET
### Court Case

Commonwealth of Pennsylvania
v.
Kenneth Nyberg

Page 1 of 3

## CASE INFORMATION

Cross Court Docket Nos: MJ-06105-CR-0000061-2014

| | |
|---|---|
| Judge Assigned: DiSantis, Ernest J. Jr. | Date Filed: 03/28/2014    Initiation Date: 03/05/2014 |
| OTN: T 438166-1        LOTN: | Originating Docket No: MJ-06105-CR-0000061-2014 |
| Initial Issuing Authority: Dominick Dipaolo | Final Issuing Authority: Dominick Dipaolo |
| Arresting Agency: Erie City Police Dept | Arresting Officer: Janus, Christopher M. |
| Complaint/Incident #: 201352684 | |
| Case Local Number Type(s) | Case Local Number(s) |

## STATUS INFORMATION

| Case Status:  Active | Status Date | Processing Status | Complaint Date:    03/05/2014 |
|---|---|---|---|
| | 04/02/2014 | Awaiting Formal Arraignment | |
| | 03/28/2014 | Awaiting Filing of Information | |

## CALENDAR EVENTS

| Case Calendar Event Type | Schedule Start Date | Start Time | Room | Judge Name | Schedule Status |
|---|---|---|---|---|---|
| Formal Arraignment | 04/28/2014 | 1:15 pm | Courtroom H - Room 229 | | Scheduled |

## CONFINEMENT INFORMATION

| Confinement Known As Of | Confinement Type | Destination Location | Confinement Reason | Still in Custody |
|---|---|---|---|---|
| 06/28/2012 | DOC Confined | SCI Albion | | No |
| 10/26/2012 | DOC Confined | SCI Camp Hill | | No |
| 01/04/2013 | County Jail | Erie County Prison | | No |
| 01/04/2013 | County Jail | Erie County Prison | | No |
| 01/02/2014 | County Jail | Erie County Prison | | Yes |



Court Exhibit B

CPCMS 9082

Printed: 04/25/2014

Recent entries made in the court filing offices may not be immediately reflected on these docket sheets. Neither the courts of the Unified Judicial System of the Commonwealth of Pennsylvania nor the Administrative Office of Pennsylvania Courts assume any liability for inaccurate or delayed data, errors or omissions on these reports. Docket Sheet information should not be used in place of a criminal history background check which can only be provided by the Pennsylvania State Police. Moreover an employer who does not comply with the provisions of the Criminal History Record Information Act may be subject to civil liability as set forth in 18 Pa.C.S. Section 9183.



# COURT OF COMMON PLEAS OF ERIE COUNTY
## SECURE DOCKET

**Docket Number: CP-25-CR-0000818-2014**
# CRIMINAL DOCKET
### Court Case

Commonwealth of Pennsylvania
v.
Kenneth Nyberg

Page 2 of 3

## DEFENDANT INFORMATION

| | | | | | |
|---|---|---|---|---|---|
| Name | Kenneth Nyberg | Hair Color | Brown | Eye Color | Green |
| Date of Birth | 07/27/1966 | Address | | | |

SSN 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
SID 297-03-81-7

Address Type Other :
% Erie Co. Prison
1618 Ash Street
Erie, PA 16503

Drivers License No:        24215946
Drivers License State:      PA
Fingerprint Status:         Not Fingerprinted

| Alias Name | Alias SID | Alias SSN |
|---|---|---|
| Nyberg, Kenneth E. | 297-03-81-7 | 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 |
| Nyberg, Kenneth Eric | 297-03-81-7 | 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 |

## CASE PARTICIPANTS

| Participant Type | Name |
|---|---|
| Crime Victim | Martinson, Matthew L. |
| Defendant | Nyberg, Kenneth |
| Prosecution | Commonwealth of Pennsylvania |
| Affiant | Janus, Christopher M. |

## CHARGES

| Seq. | Orig Seq. | Grade | Statute | Statute Description | Offense Dt. | OTN |
|---|---|---|---|---|---|---|
| 1 | 1 | M1 | 18 § 4106 §§A1II | Access Device Issd to Another Who Did Not Auth Use | 12/17/2013 | T 438166-1 |
| 2 | 2 | M1 | 18 § 3921 §§A | Theft By Unlaw Taking-Movable Prop | 12/17/2013 | T 438166-1 |
| 3 | 3 | M1 | 18 § 3925 §§A | Receiving Stolen Property | 12/17/2013 | T 438166-1 |

## DISPOSITION SENTENCING/PENALTIES

Disposition
  Case Event
    Sequence/Description
      Sentencing Judge
        Sentence/Diversion Program Type
          Sentence Conditions

  Disposition Date
    Offense Disposition
      Sentence Date
        Incarceration/Diversionary Period

  Final Disposition
    Grade    Section
      Credit For Time Served
        Start Date

**Held for Court (Lower Court)**    Defendant Was Present

| Lower Court Disposition | 03/27/2014 | Not Final | | |
|---|---|---|---|---|
| 1 / Access Device Issd to Another Who Did Not Auth Use | Held for Court (Lower Court) | M1 | 18 § 4106 §§ A1II | |
| 2 / Theft By Unlaw Taking-Movable Prop | Held for Court (Lower Court) | M1 | 18 § 3921 §§ A | |
| 3 / Receiving Stolen Property | Held for Court (Lower Court) | M1 | 18 § 3925 §§ A | |

**Proceed to Court**

| Information Filed | 04/24/2014 | Not Final |
|---|---|---|

CPCMS 9082

Printed: 04/25/2014

Recent entries made in the court filing offices may not be immediately reflected on these docket sheets. Neither the courts of the Unified Judicial System of the Commonwealth of Pennsylvania nor the Administrative Office of Pennsylvania Courts assume any liability for inaccurate or delayed data, errors or omissions on these reports. Docket Sheet information should not be used in place of a criminal history background check which can only be provided by the Pennsylvania State Police. Moreover an employer who does not comply with the provisions of the Criminal History Record Information Act may be subject to civil liability as set forth in 18 Pa.C.S. Section 9183.

# COURT OF COMMON PLEAS OF ERIE COUNTY
## SECURE DOCKET



**Docket Number: CP-25-CR-0000818-2014**
# CRIMINAL DOCKET
**Court Case**

Commonwealth of Pennsylvania
v.
Kenneth Nyberg

Page 3 of 3

## DISPOSITION SENTENCING/PENALTIES

Disposition

| Case Event<br>Sequence/Description<br>Sentencing Judge<br>Sentence/Diversion Program Type<br>Sentence Conditions | Disposition Date<br>Offense Disposition<br>Sentence Date<br>Incarceration/Diversionary Period | Final Disposition<br>Grade | Section<br>Credit For Time Served<br>Start Date |
|---|---|---|---|
| 1 / Access Device Issd to Another Who Did Not Auth Use | Proceed to Court | M1 | 18 § 4106 §§ A1II |
| 2 / Theft By Unlaw Taking-Movable Prop | Proceed to Court | M1 | 18 § 3921 §§ A |
| 3 / Receiving Stolen Property | Proceed to Court | M1 | 18 § 3925 §§ A |

## COMMONWEALTH INFORMATION

Name:  Erie County District Attorney's Office
Prosecutor
Supreme Court No:
Phone Number(s):
814-451-6349     (Phone)
Address:
Erie County Courthouse
140 West Sixth Street
Erie, PA 16501

## ATTORNEY INFORMATION

Name:

Supreme Court No:
Rep. Status:
Phone Number(s):

## ENTRIES

| Sequence Number | CP Filed Date | Document Date | Filed By |
|---|---|---|---|
| 1 | 03/28/2014 | | Clerk of Courts Office - Erie County |
| Original Papers Received from Lower Court | | | |
| 1 | 04/02/2014 | | Court of Common Pleas - Erie County |
| Assigned to Judge: DiSantis, Ernest J. Jr. | | | |
| 2 | 04/02/2014 | | Erie County Court Administration |
| Formal Arraignment Scheduled 04/28/2014  1:15PM | | | |
| 1 | 04/24/2014 | | Commonwealth of Pennsylvania |
| Information Filed | | | |

CPCMS 9082

Printed: 04/25/2014

Recent entries made in the court filing offices may not be immediately reflected on these docket sheets. Neither the courts of the Unified Judicial System of the Commonwealth of Pennsylvania nor the Administrative Office of Pennsylvania Courts assume any liability for inaccurate or delayed data, errors or omissions on these reports. Docket Sheet information should not be used in place of a criminal history background check which can only be provided by the Pennsylvania State Police. Moreover an employer who does not comply with the provisions of the Criminal History Record Information Act may be subject to civil liability as set forth in 18 Pa.C.S. Section 9183.